**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**BRENDA H. WELLS,**

           **Plaintiff,**

**-vs-**                                  **Case No. 6:05-cv-479-Orl-28DAB**

**ORANGE COUNTY SCHOOL BOARD,**

           **Defendant.**

_____

## ORDER

This cause came on for consideration with hearing on the following motions filed herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S MOTION TO COMPEL DISCOVERY AND FOR SANCTIONS AGAINST DEFENDANT, WITH REQUEST FOR ORAL ARGUMENT PURSUANT TO LOCAL RULE 3.01(J) (Doc. No. 34)** |
| **FILED:** | **August 22, 2006** |
| **THEREON** it is **ORDERED** that the motion is **GRANTED** in part. | |
| **MOTION:** | **PLAINTIFF'S MOTION FOR LEAVE TO FILE REPLY BRIEF TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL AND FOR SANCTIONS (Doc. No. 43)** |
| **FILED:** | **September 22, 2006** |
| **THEREON** it is **ORDERED** that the motion is **GRANTED**. | |

Plaintiff Brenda Wells is suing the School Board for race discrimination pursuant to Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*) arising out of her termination as the principal of Oak Ridge High School. Plaintiff filed her Motion to Compel Discovery And For

Sanctions in response to non-production of documents allegedly favorable to Plaintiff's claims of discrimination. Plaintiff's initial request for production ("RFP") sought correspondence sent or received about her from key figures in the case: her direct supervisor Roy Brooks; OCSB Superintendent Ron Blocker (who asked Plaintiff to leave her principal assignment and take an assistant principal job at a reduction in salary); and members of the Orange County School Board.

Plaintiff has in her possession emails and correspondence from various parents, teachers and School Board members which are favorable to her claims, which the School Board did not produce. Plaintiff also has in her possession a copy of an email chain between Superintendent Blocker and School Board member Kat Gordon, which Plaintiff believes to be favorable to her case in that it allegedly shows the lack of support she received as principal at Oak Ridge High School. Plaintiff's possession of this email string between Blocker and Gordon (to which Plaintiff was not a recipient or originator) is also at the center of the School Board's Motion to Amend its Answer to assert the affirmative defense of after-acquired evidence for Plaintiff's allegedly unauthorized access of Ms. Gordon's account.

At the hearing, Mr. Menendez, the School Board's Director of Infrastructure testified that Dr. Brooks' electronic records[1] were destroyed thirty days after he left the employ of Orange County in March 2004, pursuant to the policy for all departing employees, and well before the July 2005 discovery request or receipt of notice of the lawsuit in April 2005. Mr. Menendez also testified that the School Board email server processes seven to eight million emails per week; therefore, it cannot save all of them. He testified that, although the School Board does not have its own policy, individual

---

[1] There was no allegation or evidence that Dr. Brooks' hard-copy or paper records were destroyed, only the electronic records. According to Mr. Vaughn, upon departure, an employee's public records are turned over to his or her supervisor.

employees decide which emails are of "public importance," which are printed off and stored as the printed record.

Mr. Moes, Assistant General Counsel for the School Board, testified specifically as to why the search eventually completed for the remaining individuals that Plaintiff requested in July 2005 (Superintendent Blocker and members of the School Board) was not properly completed until September 2006. Mr. Moes testified that after receiving the RFP from outside counsel, he contacted Mr. Menendez via email to find out if he could run a search for "Brenda Wells" through the email server of the School Board for *all* employees. He was told the IT department could not do that because it did not have the hard drive capacity or software to run such a search. Mr. Menendez testified to a similar sequence of events, and the Court does not doubt that the miscommunication from Mr. Moes did take place as described.

However, Mr. Moes testified that he did not pursue whether individual mailboxes could be searched because it did not occur to him. Mr. Moes admitted that he did not discuss in person or show a copy of the RFP (which limited the request to only a handful of Plaintiff's superiors) to Mr. Menendez. In September 2006, the search was run through the email accounts of only certain of Plaintiff's superiors and yielded documents not previously produced. Mr. Moes also testified that "transitory emails" are those emails that are not recognized as a record intended to perpetuate knowledge, etc.

Mr. Vaughn, Assistant Director of Document Management, testified that the record retention policy for the School Board requires that everyone with an email account must agree to comply with the public law of record retention. He further testified that School Board policy is that transitory emails are conversational in nature, not "official business," and that this policy is in compliance with

the State of Florida guidelines for Local Government Agencies.  Def. Ex. 5 (Florida Department of State General Schedule for Local Governments GS1-L).  "Transitory Messages" are defined in the guidelines as:

> [R]ecords created primarily for the communication of information, as opposed to communications designed for the perpetuation of knowledge.  Transitory messages do not set policy, establish guidelines or procedures, certify a transaction, or become a receipt.  The informal tone of transitory messages might be compared to the communication that might take place during a telephone conversation or a conversation in an office hallway.  Transitory messages would include, but are not limited to: E-mail messages with short-lived, or no administrative value, voice mail, self-sticking notes, and telephone messages.

Def. Ex. 5 at 34 (Item #146).  Mr. Vaughn further testified that emails from teachers or parents in support of Plaintiff as principal (such as those in Def. Ex. 29 & 30) would be considered transitory in his opinion and would not be required by guidelines to be saved in hard-copy; it would be up to the user whether to save such emails.  As the Court pointed out at the hearing, without a more concrete policy or guidance, there will inevitably be wide variation in employees' personal definitions of "transitory," not "official business," or not of "public importance."  This wide variation is also a cloak under which some employees might try to obscure access to emails unflattering or unsupportive of their perspective on an issue.

Based on the evidence in the record and the testimony presented at the hearing, it is clear that the search performed by the School Board at the outset of discovery in July 2005 was not appropriate and the appropriate search completed in September 2006 should have been conducted and produced to Plaintiff earlier.  Better communications and diligence – *e.g.,* through personal interaction rather than email between general counsel the IT director – would have avoided one year's delay in producing relevant documents.  However, the School Board has now successfully searched for the

appropriate documents, and the record indicates that further searches would be futile. Nonetheless, Plaintiff should not have been put to the burden of the motion practice required here. **Motion costs of $750 are imposed against Defendant to be paid forthwith.**

Plaintiff has identified no specific documents which were spoliated which would give rise to an any adverse inference of spoliation. Accordingly, the matter of any additional sanctions, including whether at trial to allow evidence regarding the School Board's delay in production of documents, is left for the presiding District Judge to determine in the contest of the issues as they develop at trial. At this point, the delay in production is too ephemeral or collateral to the employment discrimination matters at issue.

> **MOTION:    DEFENDANT'S MOTION FOR LEAVE TO AMEND ITS ANSWER TO ADD AN AFFIRMATIVE DEFENSE BASED ON THE AFTER ACQUIRED EVIDENCE DOCTRINE (Doc. No. 45)**
>
> **FILED:       October 5, 2006**
> _____
>
> **THEREON** it is **ORDERED** that the motion is **GRANTED**. The School Board is **ORDERED** to file its Amended Answer within 5 days of the date of this Order.

The School Board moves to amend its Answer to assert the affirmative defense of after-acquired evidence[2] which, at a minimum, would preclude Plaintiff's recovery of front-pay. Plaintiff testified at her deposition on July 27, 2006 that she hacked into her supervisors email account as wells as other OCSB employees and school board members' e-mail accounts without permission. *See* Doc.

---

[2]*See McKennon v. Nashville Banner Publishing Co.*, 115 S.Ct. 879, 886 (1995) (when an employee commits an act during employment that would lead to termination and the employer learns of the act during the course of litigation, neither reinstatement nor front pay is an appropriate remedy); *Wallace v. Dunn Construction Co.*, 62 F. 3d 374, 378 (11th Cir. 1995).

No. 42 (Wells Deposition) at 563-66. Plaintiff also admitted in response to written discovery that she had accessed email accounts of district level employees, former supervisors, and School Board members. *See* Doc. No. 45-2, 45-3 Gaining accesses to the email accounts of other employees in an unauthorized fashion violates School Board employment directives and may be a computer related crime punishable under Florida Statutes Chapter 815.

The School Board's Motion to Amend its Answer to add after-acquired evidence is late, coming past the close of discovery, and well after the Board first learned of Plaintiff's conduct during her July 27, 2006 deposition. Doc. No. 45, filed October 5, 2006. The School Board also was not completely diligent in filing the Motion to Amend. However, the very serious allegations of "hacking" by Plaintiff are of great concern, particularly against a person in Plaintiff's former position and with her level of responsibility. The tardiness in filing the Motion to Amend can be ameliorated by allowing Plaintiff additional discovery.

Plaintiff will be allowed additional discovery on the issue of Plaintiff's alleged "hacking" or unauthorized access to other's accounts. Supplemental depositions of Ron Blocker and Janice Pratt[3] on the issue of discipline for unauthorized access to accounts shall be scheduled immediately. Counsel for the School Board, Mr. Sheppard, will determine whether there are any other School Board employees who have been disciplined for unauthorized access to another's account within the time period January 1, 2003 to the present within eleven days of the date of this Order.[4] Plaintiff will be

---

[3] The School Board filed Notice of its Intent to Rely on the Affidavits of Blocker and Pratt in support of its Motion to Amend. *See* Doc. No. 52. The School Board should have identified which of the exhibits 1 through 88 (*see* Doc. No. 50), were the Affidavits upon which it relied or refiled them with the Notice.

[4] Mr. Sheppard represented at the hearing that a preliminary search had already been conducted and had yielded no comparators.

-6-

allowed written discovery concerning any comparators, to be completed by December 15, 2006, and any depositions on the issue to be completed by January 2, 2007.

    **DONE** and **ORDERED** in Orlando, Florida on November 7, 2006.

                                            *David A. Baker*
                                        DAVID A. BAKER
                           UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record